IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, | § § § | |
| Plaintiff | § § | |
| v. | § § | CASE NO. 4:21-cv-2122 |
| TRIPLE PG SAND DEVELOPMENT, LLC. | § § § | |
| Defendant | § | JURY TRIAL DEMANDED |

## **ATAIN SPECIALTY INSURANCE COMPANY'S ORIGINAL COMPLAINT SEEKING DECLARATORY AND OTHER RELIEF**

TO THE COURT:

ATAIN SPECIALTY INSURANCE COMPANY ("ATAIN"), Plaintiff, files this as its Original Complaint Seeking Declaratory and Other Relief. ATAIN would show the Court as follows:

### **Nature of the Action**

1. ATAIN brings this action in order to obtain a declaration from this court that it has no obligation under a commercial general liability policy of insurance to provide a defense or to provide indemnity to TRIPLE PG SAND DEVELOPMENT, LLC ("TRIPLE PG") based on allegations that have now been consolidated into a multi-district litigation case styled: Cause No. 2020-48333; *In re Harvey Sand Litigation MDL*; in the 281st District Court of Harris County, Texas (the "Underlying MDL Lawsuit").

### **Parties**

2. ATAIN SPECIALTY INSURANCE COMPANY is a company organized

1

Michigan and ATAIN has its principal place of business in Michigan. For purposes of diversity jurisdiction, ATAIN is a citizen of a state other than Texas.

3.     TRIPLE PG SAND DEVELOPMENT, LLC. ("TRIPLE PG") is a corporation organized and doing business under the laws of the State of Texas. For purposes of diversity jurisdiction, TRIPLE PG SAND DEVELOPMENT, LLC is a citizen of the State of Texas. The registered agent for service of process for TRIPLE PG is Prabhakar Guniganti, 50 Waterford Circle, Nacogdoches, Texas 75965, or wherever he may be found. ATAIN asks that citation be issued so that service of process can be perfected.

## Jurisdiction and Venue

4.     An actual and justiciable controversy exists between the parties concerning rights and obligations under a policy of insurance issued by ATAIN to TRIPLE PG with regard to the claims made in the Underlying Lawsuit. 28 U.S.C. §§2201 and 2202.

5.     This Court has jurisdiction over this case under 28 U.S.C. §1332 because complete diversity of citizenship exists and because the matter in controversy exceeds $75,000, exclusive of interests and costs.

6.     Venue is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §1391(b)2) and 28 U.S.C. §124(b)(2) because a substantial party of the events giving rise to this matter occurred in this District and the Houston Division.

## Background

7.     Hurricane Harvey hit Houston and the surrounding area in August 2017.

As a result of massive rainfall, flooding took place in and around Houston.

8.  Prior to Hurricane Harvey hitting Houston and the surrounding area, ATAIN had issued a policy of insurance to TRIPLE PG with a policy period of 8/31/16 to 8/31/17, policy number CIP307002 ("the Policy")[1].

9.  Three multi-party lawsuits evolved in the aftermath of Harvey. The first lawsuit was styled: Cause No. 2018-66557; *John Ellisor v. Hansen Aggregates, LLC et al.*; in the 11th District Court of Harris County, Texas (the "Ellisor suit"). The second suit was styled: Cause No. 2020-08901; *Eduardo Del Pino v. Hansen Aggregates, LLC et al.*; in the 129th Judicial District Court of Harris County, Texas (the "Del Pino suit"). Finally, the third suit was styled: *Steven Nelson et al. v. Hanson Aggregates LLC et al.*; In the 270th Judicial District Court of Harris County, Texas (the "Nelson suit").

10. Eventually, by order dated August 18, 2020, the three suits were consolidated into a multi-district litigation case styled: Cause No. 2020-48333; *In re Harvey Sand Litigation*; in the 281st District Court of Harris County, Texas (the "Underlying MDL Lawsuit").

11. The Underlying MDL Lawsuit is not a unified lawsuit. Each of the three original lawsuit groups continue to file different amended pleadings. As of the filing of this Declaratory Judgment action, the current pleadings appear to be the following:

- The 15th Amended Petition filed in the Ellisor suit[2];

---

[1] A copy of the Policy and a business records affidavit regarding the Policy are attached as part of the Appendix, pages ATAIN 001 to 057.
[2] A certified copy of the 15th Amended Petition filed on October 14, 2020, by the Ellisor

3

- The Original Petition filed in the Del Pino suit[3].

- The First Amended Petition filed in the Nelson suit[4]; and

12. In the Underlying Lawsuits, in their individual lawsuits, the Plaintiffs make a number of allegations against TRIPLE PG.

13. Although many of the allegations are similar, there are slight variations.

**The Ellisor Plaintiffs**

14. In the 15th Amended Petition, filed by the Ellisor Plaintiffs on October 14, 2020, the Ellisor Plaintiffs allege:

> **8. Plaintiffs would show that through Triple PG Sand Development's actions, omissions, and failures, in failing to prevent materials and substances at their facilities and/or job sites and/or commercial developments and/or properties from entering the East Fork of the San Jacinto River, the overall capacity of the San Jacinto River Basin has dramatically decreased. These materials and substances limited the overall capacity of these waterways such that when the water came, the rivers and the lake simply could not hold the volume. The subsequent backflow from a full Lake Houston flooded Plaintiffs' properties and as a proximate result, Plaintiffs suffered substantial damages. Plaintiffs have consequently sued Triple PG for negligence, nuisance based on negligent conduct, and violations of the Texas Water Code.**

15. The Ellisor Plaintiffs go on to claim that:

> **569. Many defendants to this lawsuit own and/or operate mining facilities within two miles of the East Fork of the San**

---

Plaintiff group is attached as part of the Appendix, pages ATAIN 058 to 143.
[3] A certified copy of the Original Petition filed on February 7, 2020 by the Del Pino Plaintiff group is attached as part of the Appendix, pages ATAIN 144 to 262.
[4] A certified copy of the 1st Amended Petition in the Nelson suit filed on September 23, 2020 is attached as part of the Appendix, pages ATAIN 263 to 331.

>Jacinto River, the West Fork of the San Jacinto River, Spring Creek, and/or Lake Houston. Other defendants own or have owned properties and/or commercial properties and/or facilities and/or developments immediately adjacent to and/or in close proximity to these waterways. Many defendants have been cited by the Texas Commission on Environmental Quality ("TCEQ") for numerous issues, including allowing materials and substances produced and/or used and/or maintained by some Defendants to enter Spring Creek, the West Fork of the San Jacinto River, or the East Fork of the San Jacinto River. The TCEQ violations were widespread, and included the following:
>
> - **Allowing materials and substances to enter the San Jacinto River Basin, in violation of Texas Water Code §26.039[5];**
>
> - **Failure to obtain a permit to conduct industrial activities, in violation of Texas Administrative Code § 281.25;**
>
> - **Failure to prevent materials and substances from entering the San Jacinto River Basin, in violation of Texas Water Code §26.121(a)(12); and**
>
> - **Failure to minimize generation of materials and substances, in violation of Texas Administrative Code §281.25(a)(4).**

16. Pleading further, the Ellisor Plaintiffs state that:

> **571. [ . . .] During Harvey, the mines (old and active), construction sites, batch plants, commercial properties and/or other facilities along the West Fork of the San Jacinto River, the East Fork of the San Jacinto River, and**

---

[5] The portions of the Texas Water Code referenced in the Ellisor and Nelson petitions refer to discharge of pollution into waterways of Texas. True and correct copies of these statutes are attached as part of the Appendix, ATAIN pages 332 to 336. ATAIN requests that the Court take judicial notice of these statutes.

> **Spring Creek, were inundated and overcome with flood waters, and thousands of acres of materials and substances washed downstream, clogging the rivers and lakes, resulting in flood waters moving outside the banks and outside the flood plain, causing hundreds of millions of dollars in damages.**

17. The Ellisor Plaintiffs also allege that:

> **583. By failing to prevent materials and substances from entering the San Jacinto River Basin, each defendant ensured that these waterways would gradually and severely lose capacity. These waterways morphed from natural streams and rivers into artificially clogged, manmade channels that were incapable of holding any volume of water. So, when heavy rain fell, as it did in August 2017, that surface water was diverted onto land and eventually onto Plaintiffs' properties.**

18. The phrase "materials and substances" was not always used by the Ellisor Plaintiffs to describe what these mining facilities were dumping into the San Jacinto River Basin. In fact, it was not until the 12th Amended Petition[6] was filed on September 9, 2020, that the phrase "materials and substances" was used by the Ellisor Plaintiffs.

19. In the 11th Amended Petition, filed on November 8, 2019[7], the Ellisor Plaintiffs describe the "materials and substances" with much more detail:

> **8. Plaintiffs would show that through Triple PG Sand Development's actions, omissions, and failures, in discharging and/or failing to prevent the discharge of**

---

[6] A certified copy of the 12th Amended Petition filed on September 9, 2020, by the Ellisor Plaintiff group is attached as part of the Appendix, pages ATAIN 337 to 422.
[7] A certified copy of the 11th Amended Petition filed on November 8, 2019, by the Ellisor Plaintiff group is attached as part of the Appendix, pages ATAIN 423 to 507.


> **processed water, silt, sand, sediment, dirt, and other materials** from their facilities and/or job sites and/or commercial developments and/or properties into the East Fork of the San Jacinto River, the overall capacity of the San Jacinto River Basin has dramatically decreased. This sediment, silt, sand and dirt limited the overall capacity of these waterways such that when the water came, the rivers and the lake simply could not hold the volume. The subsequent backflow from a full Lake Houston flooded Plaintiffs' properties and as a proximate result, Plaintiffs suffered substantial damages. (Highlighting added).

20. The Ellisor Plaintiffs also described the discharged material in more detail in another paragraph in the 11th Amended Petition:

> **566.** Through Defendants' actions, omissions, and failures, in discharging and/or failing to prevent the discharge of **processed water, silt, sand, sediment, dirt, and other materials** from their facilities and/or job sites and/or commercial developments and/or properties into Spring Creek and the East and West Forks of the San Jacinto River, the overall capacity of Spring Creek, the West Fork of the San Jacinto River, the East Fork of the San Jacinto River, and Lake Houston has been dramatically decreased. This sediment, silt, sand and dirt limited the overall capacity of these waterways such that when the water came, the rivers and the lake simply could not hold the volume. The subsequent backflow from a full Lake Houston flooded Plaintiffs' properties and as a proximate result, Plaintiffs suffered substantial damages. (Highlighting added).

**The Del Pino suit**

21. In the Del Pino suit, filed on February 7, 2020, the Del Pino Plaintiffs allege:

> **7.** Plaintiffs would show that through Triple PG Sand

7

> Development's actions, omissions, and failures, in discharging and/or failing to prevent the discharge of processed water, silt, sand, sediment, dirt, and other materials from their facilities and/or job sites and/or commercial developments and/or properties into the East Fork of the San Jacinto River, the overall capacity of the San Jacinto River Basin has dramatically decreased. This sediment, silt, sand and dirt limited the overall capacity of these waterways such that when the water came, the rivers and the lake simply could not hold the volume.

22. The Del Pino Plaintiffs go on to claim that:

> 613. Many defendants to this lawsuit own and/or operate mining facilities within two miles of the East Fork of the San Jacinto River, the West Fork of the San Jacinto River, Spring Creek, and/or Lake Houston. Other defendants own or have owned properties and/or commercial properties and/or facilities and/or developments immediately adjacent to and/or in close proximity to these waterways. Many defendants have been cited by the Texas Commission on Environmental Quality ("TCEQ") for numerous issues, including excessive discharge which contained runoff dust, sand, construction materials, and other products produced and/or used by Defendants at locations and/or facilities and/or properties adjacent to Spring Creek, the West Fork of the San Jacinto River, and the East Fork of the San Jacinto River.

23. The Del Pino Plaintiffs further allege that:

> 627. By failing to prevent the discharge of sediment, silt, sand, dirt, and other materials into the San Jacinto River Basin, each defendant ensured that these waterways would gradually and severely lose capacity. These waterways morphed from natural streams and rivers into artificially clogged, manmade channels that were incapable of holding any volume of water. So, when heavy rain fell, as it did in August 2017, that surface water was diverted onto land and

> eventually onto Plaintiffs' properties.

**The Nelson Suit**

24. The claims of the Nelson Plaintiffs basically mirror the claims of the Ellisor Plaintiffs. In the First Amended Petition filed on September 23, 2020, the Nelson Plaintiffs allege:

> **8. Plaintiffs would show that through Triple PG Sand Development's actions, omissions, and failures, in failing to prevent materials and substances at their facilities and/or job sites and/or commercial developments and/or properties from entering the East Fork of the San Jacinto River, the overall capacity of the San Jacinto River Basin has dramatically decreased. These materials and substances limited the overall capacity of these waterways such that when the water came, the rivers and the lake simply could not hold the volume. The subsequent backflow from a full Lake Houston flooded Plaintiffs' properties and as a proximate result, Plaintiffs suffered substantial damages.**

25. Like the Ellisor Plaintiffs, the Nelson Plaintiffs also assert the following:

> **334. Many defendants to this lawsuit own and/or operate mining facilities within two miles of the East Fork of the San Jacinto River, the West Fork of the San Jacinto River, Spring Creek, and/or Lake Houston. Other defendants own or have owned properties and/or commercial properties and/or facilities and/or developments immediately adjacent to and/or in close proximity to these waterways. Many defendants have been cited by the Texas Commission on Environmental Quality ("TCEQ") for numerous issues, including allowing materials and substances produced and/or used and/or maintained by some Defendants to enter Spring Creek, the West Fork of the San Jacinto River, or the East Fork of the San Jacinto River. The TCEQ violations were widespread, and included the following:**

9

- **Allowing materials and substances to enter the San Jacinto River Basin, in violation of Texas Water Code §26.039;**

- **Failure to obtain a permit to conduct industrial activities, in violation of Texas Administrative Code § 281.25;**

- **Failure to prevent materials and substances from entering the San Jacinto River Basin, in violation of Texas Water Code §26.121(a)(12); and**

- **Failure to minimize generation of materials and substances, in violation of Texas Administrative Code §281.25(a)(4).**

26. All of the Plaintiffs seek exemplary damages against all of the Defendants[8].

## The Policy

27. In pertinent part, the insuring agreement in the Policy reads as follows:

**SECTION I – COVERAGES**

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

   However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

---

[8] *See* Ellisor 15th Amended Petition, ATAIN Appendix pages 139 to 140; Del Pino Original Petition, ATAIN Appendix pages 259 to 260; Nelson 1st Amended Petition, ATAIN Appendix page 328.

* * *

  b.  This insurance applies to "bodily injury" and "property damage" only if:

    (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[9]

28. The Policy also contains a number of exclusions that apply to remove the claims made in the Underlying MDL Lawsuit from the coverage of the Policy.

29. The Total Pollution Exclusion reads as follows:

VIII. TOTAL POLLUTION EXCLUSION WITH HOSTILE FIRE EXCEPTION

Exclusion **f.** under Paragraph **2., Exclusions, of Coverage A.-Bodily Injury and Property Damage Liability (Section I-Coverages)** is hereby deleted. The following exclusion is hereby added to **Coverage A. Bodily Injury and Property Damage Liability** under Paragraph **2., Exclusions** and to **Coverage B. Personal and Advertising Injury Liability** under **Paragraph 2., Exclusions.**

This insurance does not apply to:

  (1) "Bodily Injury", "Property Damage", "Personal and Advertising Injury" caused by or arising out of in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

    This exclusion does not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke, or fumes from a hostile fire unless that hostile fire occurred or originated:

    (a) At any premises, site, or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste; or

    (b) At any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insureds behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants'.'

    As used in this exclusion, a hostile fire means one which becomes

---

[9] *See* Policy, Appendix ATAIN page 038.

uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order, writ, injunction or judgment that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate or in any way respond to, or assess the presence or effect of any kind of "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the presence or effect of any kind of "pollutants".

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Pollutants also includes carbon dioxide and any other substance that contributes to climate change.[10]

30. In addition, the Policy contains an exclusion for Expected or Intended Injury that may remove the claims made in the Underlying MDL Lawsuit from coverage of the Policy that reads as follows:

**2. Exclusions**

This insurance does not apply to:

a. Expected Or Intended Injury "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.[11]

31. The Policy also contains definitions which may affect or eliminate coverage under the Policy. These definitions read as follows:

---

[10] *See* Policy, Appendix ATAIN page 027 to 028.
[11] *See* Policy, Appendix ATAIN page 039.

**SECTION V- DEFINITIONS**

\* \* \*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.[12]

**<u>Coverage Position</u>**

32. The Total Pollution Exclusion operates to remove the claims made by the plaintiffs in the Ellisor case, the Nelson case and the Del Pino case from coverage of the ATAIN Policy. Because of the application of the Total Pollution Exclusion, ATAIN does not owe a duty to defend or a duty to indemnify TRIPLE PG in the Underlying MDL Lawsuit or in the Ellisor case, the Nelson case or the Del Pino case.

33. In addition, the Expected or Intended Injury exclusion operates to

---

[12] *See* Policy, Appendix ATAIN pages 050 to 052.

remove claims made by the plaintiffs in the Ellisor case, the Nelson case and the Del Pino case. Specifically, any claims made in the Underlying MDL Lawsuit seeking recovery for acts or omissions of TRIPLE PG that were "foreseeable" or for which TRIPLE PG had "subjective awareness of the risk involved" would not invoke a duty to defend or a duty to indemnify TRIPLE PG on the part of ATAIN in the Ellisor case, the Nelson case or the Del Pino case.

34. Moreover, the definition of "occurrence" operates to remove from coverage of the Policy any claims against TRIPLE PG that were "foreseeable" or for which TRIPLE PG had "subjective awareness of the risk involved." The pleadings made in the the Ellisor case, the Nelson case and the Del Pino case that involve claims that TRIPLE PG had "subjective awareness of the risk involved" or that the damages from such claims were "foreseeable" to TRIPLE PG do not constitute accidents and therefore, do not constitute "occurrences." Because such acts or omissions do not constitute "occurrences," ATAIN owes neither a duty to defend nor a duty to indemnify TRIPLE PG for the claims made in the Underlying MDL Lawsuit or in the Ellisor case, the Nelson case or the Del Pino case.

35. As the Texas Supreme Court noted:

> [A] claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not.

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 9 (Tex. 2007).

36. The claims made in the Ellisor case, the Nelson case and the Del Pino

case allege that the resulting damages were either the result of intentional acts on the part of TRIPLE PG, or the damages were the natural and expected result of the TRIPLE PG's actions, that is, was highly probable whether the TRIPLE PG was negligent or not. As a result, because such acts or omissions do not constitute "occurrences," ATAIN owes neither a duty to defend nor a duty to indemnify TRIPLE PG for the claims made in the Underlying MDL Lawsuit or in the Ellisor case, the Nelson case or the Del Pino case.

37.  Moreover, this Court should consider extrinsic evidence in determining the coverage issues in this case. The Fifth Circuit has stated that when an explicit policy coverage exclusion clause is at issue, courts are more likely to consider extrinsic evidence. *Star-Tex Res., L.L.C. v. Granite State Ins. Co.*, 553 Fed. Appx. 366, 372 (5th Cir. 2014). Because it appears the Plaintiffs in the Ellisor case have attempted to skirt the impact of the Total Pollution Exclusion, and because the extrinsic evidence of what TRIPLE PG allegedly discharged into the waterways of Texas goes only to an issue of coverage, this Court should consider the nature of the materials and substances allegedly discharged by TRIPLE PG in determining the coverage issues in this case.

38.  ATAIN seeks a declaration from this Court of no coverage, and further seeks a declaration that ATAIN has no duty to defend or to indemnify TRIPLE PG for the claims made in the lawsuit styled: Cause No. 2020-48333; *In re Harvey Sand Litigation MDL*; in the 281st District Court of Harris County, Texas. In addition, ATAIN seeks a declaration from this Court that ATAIN owes neither a duty to defend nor a duty to indemnify TRIPLE PG under ATAIN

policy number CIP307002 for the claims made in and which form the basis of those particular lawsuits styled:

- Cause No. 2018-66557; *John Ellisor v. Hansen Aggregates, LLC et al.*; in the 11th District Court of Harris County, Texas;
- Cause No. 2020-08901; *Eduardo Del Pino v. Hansen Aggregates, LLC et al.*; in the 129th Judicial District Court of Harris County, Texas; or
- *Steven Nelson et al. v. Hanson Aggregates LLC et al.*; In the 270th Judicial District Court of Harris County, Texas.

39. ATAIN seeks these declarations pursuant to 28 U.S.C. §§ 2201 and 2202.

## **Prayer**

40. ATAIN prays that after consideration of the coverage issues in this case, that this Court declare that ATAIN SPECIALTY INSURANCE COMPANY owes neither a duty to defend nor a duty to indemnify TRIPLE PG SAND DEVELOPMENT COMPANY under ATAIN policy number CIP307002 for the claims made in and which form the basis of that particular lawsuit styled: Cause No. 2020-48333; *In re Harvey Sand Litigation MDL*; in the 281st District Court of Harris County, Texas. In addition, ATAIN prays that after consideration of the coverage issues in this case, that this Court declare that ATAIN INSURANCE COMPANY owes neither a duty to defend nor a duty to indemnify TRIPLE PG SAND DEVELOPMENT COMPANY under ATAIN policy number CIP307002 for the claims made in and which form the basis of those particular lawsuits styled:

- Cause No. 2018-66557; *John Ellisor v. Hansen Aggregates, LLC et al.*; in

the 11th District Court of Harris County, Texas;

- Cause No. 2020-08901; *Eduardo Del Pino v. Hansen Aggregates, LLC et al.*; in the 129th Judicial District Court of Harris County, Texas; or

- *Steven Nelson et al. v. Hanson Aggregates LLC et al.*; In the 270th Judicial District Court of Harris County, Texas.

ATAIN further prays for all other relief, general or special, at law or in equity, to which it shows itself entitled to receive.

Respectfully submitted,

BUSH & RAMIREZ, PLLC

BY: /s/ *George T. Jackson*
George T. Jackson
SBN: 10466950
FBN 15072
Gjackson.atty@bushramirez.com
5615 Kirby Drive, Suite 900
Houston, TX  77005
(713) 626-1555 phone
(713) 622-8077 fax

**ATTORNEY FOR ATAIN SPECIALTY INSURANCE COMPANY**