IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, § § | | |
| Plaintiff | § | |
| | § | |
| v. | § | CASE NO. 4:21-cv-2122 |
| | § | |
| TRIPLE PG SAND DEVELOPMENT, LLC. | § § | |
| Defendant | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ORAL HEARING

TO THE HONORABLE ALFRED H. BENNETT:

Plaintiff ATAIN SPECIALTY INSURANCE COMPANY, ("ATAIN"), files this Motion for Summary Judgment and Request for Oral Hearing. In support of its Motion and Request, ATAIN shows the Court as follows:

A. **Summary of the Argument**

1. This is an insurance coverage case. ATAIN seeks summary judgment on grounds that it has no duty to defend or indemnify its Insured TRIPLE PG SAND DEVELOPMENT LLC ("TRIPLE PG") due to the Total Pollution Exclusion found in the ATAIN Policy. Hundreds of property owners brought lawsuits against TRIPLE PG and other defendant businesses based on their alleged discharge of various materials and substances (including processed water, silt, sand, sediment, dirt, rock, and dust) into Houston-area waterways that decreased the waterways' capacity and ultimately led to the flooding of the plaintiffs' properties when Hurricane Harvey hit the area. The discharged materials and substances constitute pollutants as defined by the Policy. Therefore, the Total Pollution Exclusion applies, and ATAIN owns neither a duty to defend

1

nor a duty to indemnify TRIPLE PG against the underlying lawsuits.

**B.    Summary Judgment Standard**

2.    Summary judgment is proper if the record taken as a whole shows there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Rule 56(c), FED. R. CIV. P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, (1986). The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Coleman v. School Bd. of Richland* Parish, 418 F.3d 511, 515 (5th Cir. 2005). To overcome summary judgment, the non-movant must come forward with specific facts showing a genuine issue for trial exists. *Riverwood Intern. v. Employers Ins. of Wausau,* 420 F.3d 378, 382 (5th Cir. 2005). There is no genuine issue as to any material fact in this case. At issue here are solely questions of law, which should be resolved in ATAIN's favor. Thus, ATAIN is entitled to summary judgment as a matter of law.

**C.    Background**

3.    Hurricane Harvey hit Houston and the surrounding area in August 2017. As a result of massive rainfall, flooding took place in and around Houston.

4.    Prior to Hurricane Harvey hitting Houston and the surrounding area, ATAIN had issued a policy of insurance to TRIPLE PG with a policy period of 8/31/16 to 8/31/17, policy number CIP307002 ("the Policy")[1].

5.    Three multi-party lawsuits evolved in the aftermath of Harvey. The first lawsuit was styled: Cause No. 2018-66557; *John Ellisor v. Hansen Aggregates, LLC et al.*; in the 11th District Court of Harris County, Texas (the "Ellisor suit"). The second suit was styled: Cause No. 2020-

---

[1] A copy of the Policy and a business records affidavit regarding the Policy are attached as part of the ATAIN Motion for Summary Judgment Appendix ("AA"), pages 001 to 057.

2

08901; *Eduardo Del Pino v. Hansen Aggregates, LLC et al.*; in the 129th Judicial District Court of Harris County, Texas (the "Del Pino suit"). Finally, the third suit was styled: *Steven Nelson et al. v. Hanson Aggregates LLC et al.*; In the 270th Judicial District Court of Harris County, Texas (the "Nelson suit").

6. Eventually, by order dated August 18, 2020, the three suits were consolidated into a multi-district litigation case styled: Cause No. 2020-48333; *In re Harvey Sand Litigation*; in the 281st District Court of Harris County, Texas (the "Underlying MDL Lawsuit").

7. The Underlying MDL Lawsuit is not a unified lawsuit. Each of the three original lawsuit groups continue to file different amended pleadings. As of the filing of this Motion for Summary Judgment, the current pleadings appear to be the following:

1. The 15th Amended Petition filed in the *Ellisor* suit[2];

2. The Original Petition filed in the *Del Pino* suit[3]; and

3. The First Amended Petition filed in the *Nelson* suit[4].

8. In the Underlying Lawsuits, in their individual lawsuits, the Plaintiffs make a number of allegations against TRIPLE PG.

9. Although many of the allegations are similar, there are slight variations.

**The Ellisor Plaintiffs**

10. In the 15th Amended Petition, filed by the Ellisor Plaintiffs on October 14, 2020, the Ellisor Plaintiffs allege:

> **8.     Plaintiffs would show that through Triple PG Sand Development's actions,**

---

[2] A certified copy of the 15th Amended Petition filed on October 14, 2020, by the Ellisor Plaintiff AA 058 to 143.
[3] A certified copy of the Original Petition filed on February 7, 2020 by the Del Pino Plaintiff group AA 144 to 262.
[4] A certified copy of the 1st Amended Petition in the Nelson suit filed on September 23, 2020 AA 263 to 331.

> omissions, and failures, in failing to prevent materials and substances at their facilities and/or job sites and/or commercial developments and/or properties from entering the East Fork of the San Jacinto River, the overall capacity of the San Jacinto River Basin has dramatically decreased. . . . Plaintiffs suffered substantial damages. Plaintiffs have consequently sued Triple PG for negligence, nuisance based on negligent conduct, and violations of the Texas Water Code. AA page 063.

11. The Ellisor Plaintiffs go on to claim that:

> 569. Many defendants to this lawsuit own and/or operate mining facilities within two miles of the East Fork of the San Jacinto River, the West Fork of the San Jacinto River, Spring Creek, and/or Lake Houston. Other defendants own or have owned properties and/or commercial properties and/or facilities and/or developments immediately adjacent to and/or in close proximity to these waterways. Many defendants have been cited by the Texas Commission on Environmental Quality ("TCEQ") for numerous issues, including allowing materials and substances produced and/or used and/or maintained by some Defendants to enter Spring Creek, the West Fork of the San Jacinto River, or the East Fork of the San Jacinto River. The TCEQ violations were widespread, and included the following:
>
> 1. Allowing materials and substances to enter the San Jacinto River Basin, in violation of Texas Water Code §26.039[5];
>
> 2. Failure to obtain a permit to conduct industrial activities, in violation of Texas Administrative Code § 281.25;
>
> 3. Failure to prevent materials and substances from entering the San Jacinto River Basin, in violation of Texas Water Code §26.121(a)(12); and
>
> 4. Failure to minimize generation of materials and substances, in violation of Texas Administrative Code §281.25(a)(4). AA pages 126-127.

12. The Ellisor Plaintiffs also allege that:

> 583. By failing to prevent materials and substances from entering the San Jacinto River Basin, each defendant ensured that these waterways would gradually and severely lose capacity. These waterways morphed from natural streams and rivers into artificially clogged, manmade channels that were incapable of holding any volume of water. So, when heavy rain fell, as it did in August

---

[5] The portions of the Texas Water Code referenced in the Ellisor and Nelson petitions refer to discharge of pollution into waterways of Texas. True and correct copies of these statutes are attached as AA pages 332 to 336. ATAIN requests that the Court take judicial notice of these statutes. Fed. R. Civ. P. 201.

> **2017, that surface water was diverted onto land and eventually onto Plaintiffs' properties. AA page 131.**

13. The phrase "materials and substances" was not always used by the Ellisor Plaintiffs to describe what these mining facilities were dumping into the San Jacinto River Basin. In fact, it was not until the 12th Amended Petition[6] was filed on September 9, 2020, that the phrase "materials and substances" was used by the Ellisor Plaintiffs.

14. In the 11th Amended Petition, filed on November 8, 2019[7], the Ellisor Plaintiffs describe the "materials and substances" with much more detail:

> **8. Plaintiffs would show that through Triple PG Sand Development's actions, omissions, and failures, in discharging and/or failing to prevent the discharge of ==processed water, silt, sand, sediment, dirt, and other materials== from their facilities and/or job sites and/or commercial developments and/or properties into the East Fork of the San Jacinto River, the overall capacity of the San Jacinto River Basin has dramatically decreased. ==This sediment, silt, sand and dirt== limited the overall capacity of these waterways such that when the water came, the rivers and the lake simply could not hold the volume. The subsequent backflow from a full Lake Houston flooded Plaintiffs' properties and as a proximate result, Plaintiffs suffered substantial damages. (Highlighting added). AA, page 428.**

15. The Ellisor Plaintiffs also described the discharged material in more detail in another paragraph in the 11th Amended Petition:

> **566. Through Defendants' actions, omissions, and failures, in discharging and/or failing to prevent the discharge of ==processed water, silt, sand, sediment, dirt, and other materials== from their facilities and/or job sites and/or commercial developments and/or properties into Spring Creek and the East and West Forks of the San Jacinto River, the overall capacity of Spring Creek, the West Fork of the San Jacinto River, the East Fork of the San Jacinto River, and Lake Houston has been dramatically decreased. ==This sediment, silt, sand and dirt== limited the overall capacity of these waterways such that when the water came, the rivers and the lake simply could not hold the volume. The subsequent backflow from a full Lake Houston flooded Plaintiffs' properties**

---

[6] A certified copy of the 12th Amended Petition filed on September 9, 2020, by the Ellisor Plaintiff group is attached as AA 337 to 422.

[7] A certified copy of the 11th Amended Petition filed on November 8, 2019, by the Ellisor Plaintiff group is attached as AA 423 to 507.

and as a proximate result, Plaintiffs suffered substantial damages. (Highlighting added). AA, page 494.

**The Nelson Suit**

16. The claims of the Nelson Plaintiffs basically mirror the claims of the Ellisor Plaintiffs. In the First Amended Petition filed on September 23, 2020, the Nelson Plaintiffs allege:

> **8. Plaintiffs would show that through Triple PG Sand Development's actions, omissions, and failures, in failing to prevent materials and substances at their facilities and/or job sites and/or commercial developments and/or properties from entering the East Fork of the San Jacinto River, the overall capacity of the San Jacinto River Basin has dramatically decreased. These materials and substances limited the overall capacity of these waterways such that when the water came, the rivers and the lake simply could not hold the volume. AA page 270.**

17. Like the Ellisor Plaintiffs, the Nelson Plaintiffs also assert the following:

> **334. Many defendants to this lawsuit own and/or operate mining facilities within two miles of the East Fork of the San Jacinto River, the West Fork of the San Jacinto River, Spring Creek, and/or Lake Houston. Other defendants own or have owned properties and/or commercial properties and/or facilities and/or developments immediately adjacent to and/or in close proximity to these waterways. Many defendants have been cited by the Texas Commission on Environmental Quality ("TCEQ")[8] for numerous issues, including allowing materials and substances produced and/or used and/or maintained by some Defendants to enter Spring Creek, the West Fork of the San Jacinto River, or the East Fork of the San Jacinto River. The TCEQ violations were widespread, and included the following:**
>
> • **Allowing materials and substances to enter the San Jacinto River Basin, in violation of Texas Water Code §26.039;**
>
> • **Failure to obtain a permit to conduct industrial activities, in violation of Texas Administrative Code § 281.25;**
>
> • **Failure to prevent materials and substances from entering the San Jacinto River Basin, in violation of Texas Water Code §26.121(a)(12); and**
>
> • **Failure to minimize generation of materials and substances, in**

---

[8] *See* TCEQ Complaints and a lawsuit filed by the TCEQ against TRIPLE PG, attached as AA pages 591-1247.

        **violation of Texas Administrative Code §281.25(a)(4). AA, page 312-313.**

**The Del Pino suit**

18.   In the Del Pino suit, filed on February 7, 2020, the Del Pino Plaintiffs allege:

    **7.**   **Plaintiffs would show that through Triple PG Sand Development's actions, omissions, and failures, in discharging and/or failing to prevent the ==excessive discharge of runoff dust, sand, construction materials, and other products== produced and/or used by Defendants at locations and/or properties adjacent to Spring Creek, the West Fork of the San Jacinto River, and/or the East Fork of the San Jacinto River. AA, page 155.**

19.   The Del Pino Plaintiffs go on to claim that:

    **613.**   **Many defendants to this lawsuit own and/or operate mining facilities within two miles of the East Fork of the San Jacinto River, the West Fork of the San Jacinto River, Spring Creek, and/or Lake Houston. Other defendants own or have owned properties and/or commercial properties and/or facilities and/or developments immediately adjacent to and/or in close proximity to these waterways. Many defendants have been cited by the Texas Commission on Environmental Quality ("TCEQ") for numerous issues, including ==excessive discharge which contained runoff dust, sand, construction materials, and other products== produced and/or used by Defendants at locations and/or facilities and/or properties adjacent to Spring Creek, the West Fork of the San Jacinto River, and the East Fork of the San Jacinto River. AA, page 244-245.**

20.   The Del Pino Plaintiffs further allege that:

    **627.**   **By failing to prevent the discharge of sediment, silt, sand, dirt, and other materials into the San Jacinto River Basin, each defendant ensured that these waterways would gradually and severely lose capacity. These waterways morphed from natural streams and rivers into artificially clogged, manmade channels that were incapable of holding any volume of water. So, when heavy rain fell, as it did in August 2017, that surface water was diverted onto land and eventually onto Plaintiffs' properties. AA, page 249.**

21.   All of the Plaintiffs seek exemplary damages against all of the Defendants[9].

---

[9] *See* Ellisor 15th Amended Petition, AA pages 139 to 140; Del Pino Original Petition, AA pages 259 to 260; Nelson 1st Amended Petition, AA page 328.

**The Policy**

22.     In pertinent part, the insuring agreement in the Policy reads as follows:

**SECTION I – COVERAGES**

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

> a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> * * *
>
> b.      This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[10]

23.     The Policy also contains a number of exclusions that apply to remove the claims made in the Underlying MDL Lawsuit from the coverage of the Policy.

24.     The Total Pollution Exclusion reads as follows:

> VIII. TOTAL POLLUTION EXCLUSION WITH HOSTILE FIRE EXCEPTION
>
> Exclusion **f.** under Paragraph **2., Exclusions, of Coverage A.-Bodily Injury and Property Damage Liability (Section I-Coverages)** is hereby deleted. The following exclusion is hereby added to **Coverage A. Bodily Injury and Property Damage Liability** under Paragraph **2., Exclusions** and to **Coverage B. Personal and Advertising Injury Liability** under **Paragraph 2., Exclusions.**
>
> This insurance does not apply to:
>
>> (1)     "Bodily Injury", "Property Damage", "Personal and Advertising Injury" caused by or arising out of in whole or in part, the actual, alleged, or

---

[10] *See* Policy, AA page 038.

> threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> This exclusion does not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke, or fumes from a hostile fire unless that hostile fire occurred or originated:
>
> (a) At any premises, site, or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste; or
>
> (b) At any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insureds behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants'.'
>
>   As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.
>
> (2) Any loss, cost or expense arising out of any:
>
> (a) Request, demand, order, writ, injunction or judgment that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate or in any way respond to, or assess the presence or effect of any kind of "pollutants"; or
>
> (b) Claim or "suit" by or on behalf of a governmental authority for damages because of monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the presence or effect of any kind of "pollutants".
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.
>
> Pollutants also includes carbon dioxide and any other substance that contributes to climate change.[11]

25. The Policy also contains definitions which may affect or eliminate coverage under the

Policy. These definitions read as follows:

---

[11] *See* Policy, AA page 027 to 028.

9

**SECTION V- DEFINITIONS**

\* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.[12]

**D.   Coverage Position**

26. The Total Pollution Exclusion operates to remove the claims made by the plaintiffs in the *Ellisor* case, the *Nelson* case and the *Del Pino* case from coverage of the ATAIN Policy. Because of the application of the Total Pollution Exclusion, ATAIN does not owe a duty to defend or a duty to indemnify TRIPLE PG in the Underlying MDL Lawsuit or in the *Ellisor* case, the *Nelson* case or the *Del Pino* case.

27. Moreover, this Court should consider extrinsic evidence in determining the coverage issues in this case. The Fifth Circuit has stated that when an explicit policy coverage exclusion clause is at issue, courts are more likely to consider extrinsic evidence. *Star-Tex Res., L.L.C. v.*

---

[12] *See* Policy, AA pages 050 to 052.

*Granite State Ins. Co.*, 553 Fed. Appx. 366, 372 (5th Cir. 2014); *see also Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199–200 (Tex. 2022). Because it appears the Plaintiffs in the *Ellisor* and *Nelson* cases have attempted to skirt the impact of the Total Pollution Exclusion, and because the extrinsic evidence of what TRIPLE PG allegedly discharged into the waterways of Texas goes only to an issue of coverage, this Court should consider the nature of the materials and substances allegedly discharged by TRIPLE PG in determining the coverage issues in this case.

## Argument and Authorities

### 1.   No Duty to Defend Exists Under the Eight Corners Rule.

28.   In determining whether an insurer owes a duty to defend, Texas follows the "eight-corners" rule. *E.g., Noble Energy, Inc. v. Bituminous Cas. Co.,* 529 F.3d 642, 645 (5th Cir. 2008). That is, in determining whether a duty to defend exists, courts must generally compare only the four corners of the policy with the four corners of the underlying petition. *E.g., GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 308 (Tex. 2006). The insurer is required to defend an underlying suit whenever the "facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *Colony Ins. Co. v. Peachtree Const., Ltd.,* 647 F.3d 248, 253 (5th Cir. 2011). However, "if the pleading only alleges facts excluded by the policy, there is no duty to defend." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.,* 699 F.3d 832, 840 (5th Cir. 2012). Here, the allegations fall squarely within the Policies' Total Pollution Exclusions, and no duty to defend exists.

29.   With respect to the Total Pollution Exclusion, the Texas Supreme Court has long recognized such pollution exclusions as "clear and susceptible of only one possible

interpretation." *Nation Union Fire Ins. Co. v. CBI Indus.,* 907 S.W. 517, 521 (Tex. 1995). Total Pollution Exclusions are just what they purport to be: Total. *See id.* Moreover, "Texas courts have consistently held similar pollution exclusions to be unambiguous." *Noble Energy, Inc. v. Bituminous Cas. Co.,* 529 F.3d 642, 646 (5th Cir.2008) (considering exclusion for "Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants" where pollutants were defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste"); *Zaiontz v. Trinity Universal Ins. Co.,* 87 S.W.3d 565, 571 (Tex.App.-San Antonio 2002, pet. denied) (holding that a similar pollution exclusion was not latently ambiguous). *Evanston Ins. Co. v. Lapolla Indus., Inc.*, 93 F. Supp. 3d 606, 614 (S.D. Tex. 2015), aff'd, 634 Fed. Appx. 439 (5th Cir. 2015).

30. Over two decades ago, Judge Atlas decided the case of *Clarendon American Insurance Co. v. Bay, Inc.,* 10 F. Supp. 2d 736 (S.D. Tex. 1998) (Atlas, J.). *Clarendon* addressed the identical Total Pollution Exclusion at issue here. Just as here, the insurer sought a declaratory judgment that it had no duty to defend or indemnify based on the Total Pollution Exclusion, and like here, the insurer moved for summary judgment. Judge Atlas decided that "[o]n its face, this exclusion presents no patent ambiguity," noting that "[m]ost courts which have examined the same or substantially similar total pollution exclusions have concluded that they are clear and unambiguous." *Id.* at 743 (citing *CBI Indus., Inc.,* 907 S.W.2d 521).

31. Judge Atlas explained, relying on Fifth Circuit precedent, that pollution exclusions "are not limited in application to traditional environmental pollution – releases that cause widespread environmental harm." *Id.; see also American States Ins. Co.*

*v. Nethery,* 79 F.3d 473, 475-76 (5th Cir. 1996); *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.,* 112 F.3d 184, 187 (5th Cir. 1997) (holding that discharge of phenol gas into tent constituted "pollution" for purposes of pollution exclusion, notwithstanding argument that incident was more akin to simple workplace accident than traditional environmental pollution); *Nethery,* 79 F.3d at 475-76 (holding, under Mississippi law, that pollution exclusion encompassed paint and glue fumes as "irritants," even though they do not normally inflict injury). Thus, Judge Atlas acknowledged that Texas state and federal courts have not considered the word "pollution" a term of art. *Id.* at 744.

32. Judge Atlas also rejected the insured's argument that sand, gravel, cement, and silica are merely raw materials, by-products, or end-products and cannot be considered pollutants because they do not appear on Environmental Protection Agency lists. Judge Atlas again cited Fifth Circuit precedent noting that "numerous courts have found substances constituted pollutants regardless of their ordinary usefulness." *Nethery,* 79 F.3d at 477-78 (citing cases finding that carbon monoxide from Zamboney, dust from packing operations, and passive cigarette smoke all constituted pollutants). Judge Atlas, thus, concluded dust, sand, gravel, tile, concrete, cement, silica, fumes, and other particulates qualified as pollutants. *Clarendon,* 10 F. Supp. 2d at 744. Accordingly, Judge Atlas granted summary judgment to the insurer with respect to the discharge of dust, sand, gravel, tile, concrete, cement, silica, fumes, and other particulates.

33. Five years later, the Fifth Circuit in *Cleere Drilling Co. v. Dominion Exploration & Production, Inc.,* determined "salt water, sand, and drilling mud" constituted contaminants

under a pollution exclusion. *Cleere*, 351 F.3d 642, 651 (5th Cir. 2003). The Fifth Circuit made that determination even assuming the salt water, sand, and drilling mud "did not or could not cause environmental damage." *Id.* The court found that their mere presence on the face of the land surrounding a well "certainly meets the definition of '"contamination.'" *Id.* And that the materials "indisputably" constituted "foreign substances," "undesirable elements," and that they rendered the area "soiled, stained, impure, and almost certainly unfit for its intended use." *Id.*

36. Just last year, the Fifth Circuit ruled again on the subject of the application of an insurance policy's pollution exclusion in *Eastern Concrete Materials, Inc. v. Ace American Insurance Company, Inc.,* 948 F.3d 289 (5th Cir. 2020) (affirming 325 F. Supp. 3rd. 719). In *Eastern Concrete,* the insurer sought a declaratory judgment that it was not required to defend or indemnify its insured due to a Total Pollution Exclusion in its policy virtually identical to the one at issue here. The specific question the court addressed was whether an unplanned discharge of "rock fines" -pellets produced during the course of quarry operations -fell within the exclusion. *Id.* at 293. The district court granted the insurer's motion for summary judgment. Eastern Concrete appealed, and the Fifth Circuit affirmed.

27. The insured's operations at issue in *Eastern Concrete* created rock fines, substantial amounts of which were inadvertently released into a New Jersey creek, causing "physical damage to the stream and stream bed by changing the flow and contours of the stream." *Id.* at 295. The exclusion at issue in *Eastern Concrete* contained the phrase: "The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants," however caused." The policy also contained the identical definition of "pollutants" at issue here: any solid, liquid, gaseous or thermal irritant or contaminant, including, but not

limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. *Id.* at 294. The State of New Jersey ordered the insured to remove the rock fines, and the insured sought reimbursement as well as a defense.

38. The district court concluded rock fines constituted "pollutants" under the policy and, thus, that the insurer had no duty to defend or indemnify Eastern Concrete. Specifically, the district court determined that rock fines are "waste material generated in the rock crushing process" because they are "materials intended to be reclaimed." Additionally, the rock fines "became irritants or contaminants when they were discharged and dispersed where they did not belong." *Id.* At 301. If this were not so, the district court opined, "New Jersey would not have required remediation," and Eastern Concrete would not have been sanctioned for violating New Jersey's Water Pollution Control Act. *Id.* (citing N.J. STAT. ANN. § 58:10A-3(n), which lists "rock, sand, [and] cellar dirt" as "pollutants"). Nonetheless, according to a notice issued by New Jersey shortly after the incident, the rock fines posed "no threat to drinking water, nor to anyone who would use the area for fishing nor to the fish that they might catch." *Id.* at 302. But it did "change the flow and contours of the stream . . . ." *Id.*

**2.     Allegations Fall Within Unambiguous Exclusion**

39. Comparing the Policies to the live Petition in the *Del Pino* Suit, it is clear ATAIN owes no duty to defend. In the *Del Pino* Suit, the plaintiffs specifically reference the underlying defendants' "discharge of pollutants" into Houston-area waterways. AA, pages 155, 244-245, 249. The plaintiffs in the *Del Pino* Suit also reference many citations by the Texas Commission for Environmental Quality ("TCEQ") for widespread and numerous issues, "including excessive discharge which contained runoff dust, sand, construction materials, and

other products produced and/or used by Defendants at locations and/or facilities and/or properties adjacent to various Texas waterways. *See* TCEQ Investigations and the lawsuit filed by TCEQ against TRIPLE PG, AA pages 591-1247.

40. More specifically, Plaintiffs in the *Del Pino* Suit allege all underlying defendants, including TRIPLE PG, "failed to prevent the discharge of sediment, silt sand and dirt," and other materials into Houston-area waterways, which decreased the waterways' capacity and contributed to the flooding of their properties. *See* AA, pages 155, 244-245, 249. The *Del Pino* plaintiffs have also identified "run off dust and construction materials," as one of the discharged materials, as well as "sand." AA, pages 155, 244-245, 249.

41. Thus, just as in *Eastern Concrete, Cleere Drilling,* and *Clarendon,* this Court should find that the pleadings that silt, sand, sediment, dirt, sand, and other materials that TRIPLE PG, allegedly discharged into Houston-area waterways constitute pollutants, and the Total Pollution Exclusion found in each of the Policies precludes any duty to defend against the *Del Pino* Suit. Thus, this Court should grant summary judgment in ATAIN's favor on the duty to defend.

**3.** **The Other Plaintiffs' Allegations Likewise Fall Squarely within the Policy's Total Pollution Exclusion.**

42. The plaintiffs in the *Ellisor* and *Nelson* Suits have artfully deleted the bald references to "processed water," "silt," "sediment, "dirt," "rock," and "dust" from their live petitions. They now speak in vaguer terms. Instead of transparently pointing to the underlying defendants' "discharge" of materials and substances and identifying the materials and substances, they speak instead of the underlying defendants' "allowing" unidentified "materials and substances" to "enter" the waterways. AA, pages 063, 126-127, 270, 312-313.

Despite their artful pleading, the identity of those materials and substances and their discharge into local waterways remains perfectly clear for a number of reasons.

43. The live *Ellisor* and *Nelson* petitions continue to reference the Texas Water and Administrative Codes, which address the discharge of substances and materials into Houston-area waterways. The underlying plaintiffs all cite § 26.039 of the Texas Water Code (referencing "discharge" and "pollution"); § 26.12l (a) of the Texas Water Code (referencing "discharge," "industrial waste," and "waste" that causes "pollution" waterways); and § 281.25 of the Texas Administrative Code (referencing "pollutant discharge"). AA pages 332-336.

44. In addition, the *Ellisor* and *Nelson* Suits contain photographs, diagrams and documents referencing the "discharge" of "sand" into Houston-area waterways. AA, pages 061, 066, 128, 268, 272. Furthermore, the live *Ellisor* and *Nelson* petitions continue to reference external documents such as the TCEQ investigations. AA, pages 312-131, 244-245. A court should review documents referenced in the petition must be in order to properly engage in eight-corners analysis. *See Gleason* v. *Markel Am, Ins. Co.,* No. 4:17-CV-00163, 2018 U.S. Dist. LEXIS 11608 at *20 (E.D. Tex. Jan. 24, 2018) (holding the petition's reference to an external Purchase Agreement "requires the Purchase Agreement to be consulted in order to properly engage in the 'eight comers' analysis") (citing *In re Deepwater Horizon,* 470 S.W.3d 452, 464 (Tex. 2015); *Ins. Co. of the State of Penn.* v. *Roberts, 506* S. *W 3d 498, 505-06 (Tex. App.-Houston [1st Dist.} 2017, rev 'd on other grounds)).* Specifically, the live *Ellisor* and *Nelson* petitions continue to reference Exhibit 2. *See* AA 062, 269, 508-591. That exhibit speaks of the "discharge of pollutants" and the "failure to maintain pollution prevention measures." *See* AA, pages 547, 548.

45. Thus, it is clear that the underlying plaintiffs in the *Ellisor* and *Nelson* Suits, just

like the underlying plaintiffs in the *Del Pino* Suit, allege that TRIPLE PG discharged pollutants into Houston-area waterways, which in part, caused their damages. Thus, the Total Pollution Exclusion found in the Policy is triggered, and coverage is precluded. Thus, this Court should grant Summary judgment in favor of ATAIN on the duty to defend the *Ellisor* and *Nelson* Suits..

**B.    Summary Judgment Warranted on Duty to Indemnify**

46.    This Court should also grant Summary judgment in favor of ATAIN on the duty to indemnify. The duties to defend and to indemnify are generally distinct. *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex. 1997). While an insurer may have a duty to defend, it may ultimately not have a duty to indemnify. *Id.* On the other hand, an insurer may not have a duty to defend, yet may ultimately have a duty to indemnify. *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.,* 300 S.W.3d 740, 743-45 (Tex. 2009); *Colony Ins. Co. v. Peachtree Constr., Ltd.,* 647 F.3d 248, 254 (5th Cir. 2011). These duties can arise independently because the duty to defend depends on the underling pleadings, while the duty to indemnify generally depends on the facts determined at trial in the underlying lawsuit. *D.R. Horton-Texas,* 300 S.W.3d at 744. Accordingly, the duty to indemnify typically cannot be adjudicated until judgment is reached in the underlying suit because facts proven at trial may differ from allegations made in the pleadings. *Griffin,* 955 S.W.2d at 83-84; *Peachtree,* 647 F.3d at 254-55. However, courts can grant a motion for summary judgment on the duty to indemnify before the underlying case goes to trial.

47.    In *Clarendon* and *Eastern Concrete,* discussed above, summary judgment was granted simultaneously on the duty to defend and the duty to indemnify. *Clarendon*, 10 F. Supp. 2d at 750; *Eastern Concrete*, 948 F. 3d at 293 (affirming district court's grant of summary judgment

on duty to indemnify).The same should occur in the case before this Court.

**Conclusion and Prayer**

48.     The allegations that TRIPLE PG discharged or dispersed or allowed a condition that caused sand, silt or industrial waste to enter the San Jacinto River is fatal to its claims for coverage from ATAIN for the underlying lawsuits. As in *Eastern Concrete*, this Court should grant summary judgment in favor of ATAIN on the duty to defend and the duty to indemnify.

49.     ATAIN prays this Court grant summary judgment in favor of ATAIN, and issue an order declaring ATAIN has neither a duty to defend nor a duty to indemnify TRIPLE PG against the claims made in the Harvey MDL underlying lawsuit. ATAIN prays for all other relief to which it is entitled, including attorney's fees if this Court feels such an award is warranted.

                        Respectfully submitted,

                        BUSH & RAMIREZ, PLLC
                        BY:  /s/ George T. Jackson
                        George T. Jackson
                        Fed. Bar 15072
                        5615 Kirby Drive, Suite 900
                        Houston, Texas   77005
                        (713) 626-1555 phone
                        (713) 622-8077 fax
                        Gjackson.atty@bushramirez.com
                        **COUNSEL FOR ATAIN SPECIALTY INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**

I certify that the foregoing Motion for Summary Judgment by ATAIN SPECIALTY INSURANCE COMPANY was served on all counsel of record on May 16, 2022 via EFC and electronic service.

| | |
|---|---|
| Scott C. Skelton<br>SBN: 00784979<br>Skelton │ Slusher │ Barnhill │ Watkins │ Wells PLLC<br>1616 S. Chestnut St.<br>Lufkin, TX  75901<br>Tel:  936-632-2300<br>Fax:  936-632-6545<br>Email:  sskelton@skeltonslusher.com | Holli Pryor-Baze<br>State Bar No. 24013357<br>SDTX Bar No. 24586<br>hpryorbaze@akingump.com<br>Alyx Eva<br>State Bar No. 24116334<br>SDTX Bar No. 3544812<br>aeva@akingump.com<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1111 Louisiana Street, 44th Floor<br>Houston, Texas 77002<br>Phone: 713.220.5800<br>Fax: 713.236.0822 |

                         */s/ George T. Jackson*
                         George T. Jackson