United States District Court
Southern District of Texas

**ENTERED**

February 28, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Atain Specialty Insurance Company, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:21-cv-02122 |
| Triple PG Sand Development, LLC, | § § § | |
| *Defendant.* | § § § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Plaintiff Atain Specialty Insurance ("Atain") filed a Motion for Summary Judgment.  Dkt. 20.  After carefully considering the motion, response (Dkt. 23), reply (Dkt. 26), and the applicable law, it is recommended that Atain's motion be denied and that the request by Defendant Triple P.G. Sand Development, L.L.C. ("Triple PG") for abatement of this suit be granted.

## <u>Background</u>

This is an insurance coverage dispute.  Atain sued its insured, Triple PG, for a declaration that it owes no duty to defend or indemnify Triple PG in underlying lawsuits that had been consolidated into a multi-district litigation case pending in Harris County, Texas.  Dkt. 1.

Atain issued a Commercial General Liability (CGL) policy to Triple PG for the year covering August 31, 2016 to August 31, 2017.  Dkt. 2 at 1 (CGL Declarations); Dkt. 20 at 1.  According to the policy, Triple PG was in the business of "sand mining."  *Id.*  This policy's coverage period included the relevant timeframe in 2017 when Hurricane Harvey made landfall in Houston, causing catastrophic flooding.  *Id.*

## I. Triple PG was named as a defendant in three lawsuits alleging that numerous entities contributed to flooding by releasing substances into the waterways.

In 2018, Triple PG was named as a defendant in the first of three mass tort lawsuits arising out of Hurricane Harvey property damage.  In the first of those suits (the "*Ellisor*" suit), 482 plaintiffs sued Triple PG and 52 other defendants to recover flood damages to their property.  *See generally id.* at 58-143 (Ellisor's Fifteenth Amended Petition).[1]  The *Ellisor* suit alleges that defendants contributed to the decades-long degradation of the waterways and retention lakes that were built to control flooding in the Houston area.  *Id.*

---

[1] Atain attached the CGL policy, as well as the operative petitions for the *Ellisor*, *Del Pino*, and *Nelson* lawsuits as appendices to its complaint and its motion for summary judgment.  *See* Dkts. 2, 20.  Atain's appendices are not tabulated to separate one document from another, instead running consecutive page numbers through multiple documents.  The *Ellisor* petition can be found at pages 58-143 of the appendices (Dkts. 2, 20); the *Del Pino* petition can be found at pages 144-262; and the *Nelson* petition can be found at 263-331.  For more specific reference, however, the Court will refer to each underlying petition by its name and provide a citation to the relevant paragraph therein.  *E.g.*, *Ellisor* ¶ 1.  References to page numbers correspond to the Bates number at the bottom of each page of Atain's appendix.

Since 1954, the defendants allegedly have released "materials and substances" into these bodies, causing their capacity to decrease significantly over time. *Id*. ¶¶ 565-68. As a result, the flood control channels and lakes "simply could not hold the volume" of water that fell during Hurricane Harvey, causing them to overflow. *Id*. ¶¶ 572-89.

In 2020, two other suits were filed against Triple PG: the "*Del Pino*" and "*Nelson*" suits. *Id*. at 144-262 (*Del Pino* Original Petition), 263-331 (*Nelson* First Amended Petition). These suits included substantially the same allegations, but added 524 and 246 plaintiffs, respectively. *Id*. In the *Ellisor*, *Del Pino,* and *Nelson* suits (collectively with *Ellisor*, the "Underlying Lawsuits"), the plaintiffs allege multiple theories of liability against Triple PG and their co-defendants—negligence, negligence per se, violations of the Texas Water Code, and nuisance. Dkt. 20 (*Ellisor* ¶¶ 573-89; *Del Pino* ¶¶ 617-33; *Nelson* ¶¶ 338-54). While the *Ellisor* suit has been amended repeatedly and *Nelson* has been amended once, the factual and legal theories have remained consistent and parallel—sufficiently so such that they were consolidated into Cause No. 2020-48333, *In re Harvey Sand Litigation*, an MDL in the 281st Judicial District Court of Harris County, Texas. Dkt. 20 at 3.

## II.    Atain filed this suit, asserting that a "Total Pollution Exclusion" forecloses any duty to defend or indemnify Triple PG in the Underlying Lawsuits.

Atain brought this suit seeking a declaratory judgment that it need not defend nor indemnify them against any claim in the Underlying Lawsuits. Dkt. 1 ¶¶ 32-40 (First Amended Complaint). Although Atain pleaded contractual defenses that hinged upon the interpretation of other terms (*e.g.*, foreseeability), *id.* ¶ 33, it eventually moved for summary judgment on only one theory—that the Total Pollution Exclusion barred coverage.  Dkt. 20.

Triple PG's policy includes the following Total Pollution Exclusion:

This insurance does not apply to:

(1) "Bodily Injury," "Property Damage," "Personal and Advertising Injury" caused by or arising out of in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

…

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.  Pollutants also includes carbon dioxide and any other substance that contributes to climate change.

*Id.*, App'x at 27-28 (CGL Policy, Article VIII – Total Pollution Exclusion with Hostile Fire Exception).  The definitions section of the policy also repeats this definition of "Pollutants."  *Id.*, App'x at 50 (Definition 15).

4

Atain does not dispute that Triple PG was an insured entity covered by one of its CGL policies during Hurricane Harvey, nor does Triple PG dispute that the Total Pollution Exclusions would preclude coverage if triggered by the Underlying Lawsuits. *See generally* Dkts. 20, 23. Rather, the parties dispute the application of the Total Pollution Exclusion's language to the factual allegations in the Underlying Lawsuits.

## Legal Standard

A court must grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue that it tends to resolve "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). When resolving a motion for summary judgment, the court must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *See Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted).

5

## Analysis

This Court recently addressed the application of a substantially identical total pollution exclusion to the same underlying *Ellisor*, *Del Pino*, and *Nelson* petitions. *See generally Evanston Ins. Co. v. Tex. Concrete & Sand Gravel, Inc.*, 2022 WL 18144985, at *1 (S.D. Tex. Aug. 2, 2022), *report and recommendation adopted*, 2022 WL 18144986 (S.D. Tex. Aug. 30, 2022). The parties have not provided, nor has the Court identified, any controlling authority that would merit a different result, given the application of Texas law, the parallel language of the Total Pollution Exclusion clause, and the allegations within the "four corners" of the underlying petitions.[2]

Indeed, in support of its motion for summary judgment, Atain and Evanston (the insurer there) rely on the same authorities on whether the exclusion applies to the release of particulates such as sand and gravel. *Compare id.* at *5-6, *with* Dkt. 20 at 12-15 (citing *Clarendon Am. Ins. Co. v.*

---

[2] In its independent review, the Court located only one Fifth Circuit decision addressing Total Pollution Exclusions since the *Evanston* opinion was issued. That decision has no relevance to these parties' dispute. There, the insurer argued that the exclusion barred a class action filed by plaintiffs who drank water that had been allegedly contaminated by an insured's oil spill in the Mississippi River. *Cent. Crude, Inc. v. Liberty Mut. Ins. Co.*, 51 F.4th 648, 654 (5th Cir. 2022). Thus, the factual and legal analysis had only thematic overlap to this dispute, as it was resolved by the application of Louisiana law to underlying allegations of an oil spill. *Id.* at 656-57 (analyzing Louisiana precedents to determine that, unlike lawsuits based on personal injury from interacting with irritants and contaminants, the "very purpose of" total pollution exclusions are to bar claims arising out of an oil spill and its clean-up).

*Bay, Inc.*, 10 F. Supp. 2d 736 (S.D. Tex. 1998); *Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642 (5th Cir. 2003); *Eastern Concrete Materials, Inc. v. Ace Am. Ins. Co.*, 948 F.3d 289 (5th Cir. 2020)).   Accordingly, it is recommended that Atain's motion be denied for the same reasons set forth in *Evanston*, which are recounted and adapted below.

## I.   Under Texas law, the "eight corners" rule governs whether Atain must defend Triple PG in the Underlying Lawsuits.

Texas law applies to this declaratory-judgment action based on diversity jurisdiction.[3]   *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996); *see also* Dkt. 1 ¶¶ 2-5 (jurisdictional allegations).   Under Texas law, an insurance company's duty to defend and duty to indemnify are distinct.   *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-22 (Tex. 1997).   The "duty to defend is broader than its duty to indemnify."   *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Texas*, 249 F.3d 389, 391 (5th Cir. 2001) (citing *St. Paul Ins. Co. v. Texas Dep't of Transp.,* 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, writ denied)).   Courts may determine and enforce an insurer's duty to defend "even when an insurer's duty to indemnify is not yet settled."   *Id.* at 391; *D.R. Horton-Tex., Ltd. v. Market Int'l Ins. Co.*, 300 S.W.3d 740, 743-44 (Tex. 2009) (insurance

---

[3] The parties also rely on the application of Texas law.   *See generally* Dkts. 20, 23, 26.

company may owe one duty but not the other).

"The general rule is that the insurer is obligated to defend [its insured] if there is, potentially, a case under the complaint within the coverage of the policy." *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (modification in original, internal quotations omitted); *Zurich Am. Ins. Co. v. Nokio, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). "Texas courts apply the 'eight corners' rule to determine whether an insurer has a duty to defend." *Green Tree Fin.*, 249 F.3d at 391 (citing *Potomac Ins. Co. of Ill. v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 551 (5th Cir. 2000)). Under the "eight corners" rule, courts determine whether the conduct described in the factual allegations, if taken as true, state a cause of action within the terms of the policy. *Id.* "The focus of this inquiry is on the facts alleged, not on the actual legal theories." *Id.* at 392 (internal citation omitted).

"The factual allegations in a third party's complaint must be liberally construed in favor of the insured." *Id.* If there is a "doubt as to whether or not the [factual] allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *Harken*, 261 F.3d at 471 (modifications in original, internal quotations omitted); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merch. Fast Motor*

*Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) ("When applying the eight corners rule, we give the allegations in the petition a liberal interpretation.").

## II.   Atain has not established that the Total Pollution Exclusion bars coverage.

Atain has moved for summary judgment on the grounds that the Underlying Lawsuits allege claims that "fall within [the] unambiguous exclusion" the policies' Total Pollution Exclusion.  Dkt. 20 at 15-18.  As the insurer, Atain bears the burden of proving that the exclusion "constitutes an avoidance of or an affirmative defense to coverage."  *Canutillo Indep. Sch. Dist.*, 99 F.3d at 701.

Under the "eight corners" rule, Atain must show that that the factual allegations in the Underlying Lawsuits trigger the Total Pollution Exclusion. *See Green Tree Fin.*, 249 F.3d at 391.  That is, for Atain to prevail on summary judgment, the underlying plaintiffs must have alleged "'Bodily Injury,' 'Property Damage,' [or] 'Personal and Advertising Injury' caused by or arising out of in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." *See* Dkt. 20, App'x at 28.

### A.   Because the Underlying Lawsuits allege property damage and release, the dispositive issue is whether they alleged "Pollutants."

The parties do not dispute that the underlying plaintiffs have alleged

property damage arising out of Hurricane Harvey flooding, caused by defendants' displacement of floodway capacity.  The Underlying Lawsuits also assert that Triple PG's materials ran off its property and "entered" the public Houston waterways, Dkt. 20 at 71 (*Ellisor* ¶ 572), 246 (*Del Pino* ¶ 616), 314 (*Nelson* ¶ 337), and Triple PG has not argued (or identified authority) that these factual allegations fall outside the meaning of "discharge, dispersal, seepage, migration, release or escape."  *See generally* Dkt. 23 at 8-15.

Accordingly, the dispositive issue whether the "materials and substances" alleged constitute "Pollutants" under the policy.  To answer this question, Atain asks the Court to focus myopically on the substances allegedly discharged and deem them *per se* polluting regardless of the factual context.  *See generally* Dkt. 20 at 11-17.  That approach does not comport with case law.

## B.  Aggregates and particulates are not *per se* pollutants.

Atain argues that the *Del Pino* suit illustrates that the Total Pollution Exclusion applies to all three Underlying Lawsuits.[4]  The *Del Pino* petition

---

[4] Atain accurately notes that the *Ellisor* and *Nelson* lawsuits no longer identify the types of substances that the defendants allegedly allowed to lower the waterway's capacity.  Dkt. 20 at 16-18.  Instead of identifying processed water, silt, sand, sediment, dirt, rocks, dusts, or the like, the *Ellisor* and *Nelson* plaintiffs have amended their petitions to complain of unspecified "materials and substances" entering the waterways.  *Id.*  While Atain's observation is correct, the distinction is immaterial to the Court's analysis.

The Court need not and should not look beyond the "eight corners" to consider previous versions of the *Ellisor* or *Nelson* complaint.  It agrees with Triple PG that Atain's reference to these older pleadings and documents purportedly related to the

alleges that the defendants, including Triple PG, discharged "processed water, silt, sand, sediment, dirt, and other materials" into Houston-area waterways and lowered their capacity—effectively displacing potential floodwater with discharge.  Dkt. 20, App'x at 155 (*Del Pino* ¶ 7).  These specific materials are not expressly included in the policies' definition of "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  *See id.* at 28, 52 (CGL policy).  Nonetheless, Atain invokes cases where courts classified these materials as pollutants under substantially similar pollution-exclusion clauses.  But the cases do not classify these materials as "pollutants" in *every* coverage dispute.

In *Clarendon American Ins. Co.*, 10 F. Supp. 2d at 744, an insurer owed no duty to defend a cement company for certain claims because silica was found to be "within the ambit of 'pollution' as defined in [the exclusion]."  The underlying lawsuits alleged bodily injuries from inhaling "dust, sand, and other substances containing silica" while working at the insured's cement facility.  *Id.* at 743.  The court "pars[ed] the language" of the policy's Total

---

Texas Commission on Environmental Quality's enforcement proceedings are immaterial to this coverage dispute.  Dkt. 23 at 2, 17-20.  Indeed, considering such materials would be both improper and unnecessary, as the Court's analysis is limited to the "latest, and only the latest, amended pleadings."  *See Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329-30 (5th Cir. 2022) (quoting *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) (applying Texas law)).

Pollution Exclusion and found that, when applied to the underlying factual allegations, the policy required a "mixed coverage result." *Id.* Coverage was excluded for bodily injuries allegedly resulting from plaintiffs' contact with "*any* solid, liquid, [or] gaseous … *irritant or contaminant*"—*e.g.*, silica in the air. *Id.* at 743, 745 (emphasis in original). But the insurer had to defend the insured for bodily injuries arising out of contact with materials that were in their "intended container or location." *Id.* at 744. Thus, the context in which the materials injured the plaintiffs determined whether it was "pollution."

In *Cleere Drilling Co.*, 351 F.3d at 651-52, the Fifth Circuit analyzed whether materials released from an oil rig blowout fell within a drilling contract's "Pollution and Contamination" clause. Because the contract did not define "contamination"—which likewise is true in this suit—the court looked to dictionary definitions. *Id.* at 651. One source defined contamination as a "[c]ondition of *impurity* resulting from mixture or contact with foreign substance," which the court noted did not require environmental harm. *Id.* at 651 & n.17 (quoting Black's Law Dictionary 1159 (6th ed. 1990) (emphasis added)). Another source defined the verb, "to contaminate," as "to *soil, stain, corrupt, or infect* by contact or association" or "*to render unfit* for use by the introduction of unwholesome or undesirable elements." *Id.* at 651 & n.18 (Webster's Third New International Dictionary 491 (1986) (emphasis added)).

12

The Fifth Circuit applied Webster's definition for "contamination" when holding that the "salt water, sand, and drilling mud" from the blowout were "foreign substances" or "undesirable elements" that "rendered the surface area soiled, stained, impure, and almost certainly *unfit for its intended use*." *Id.* at 651 (emphasis added).  Once again, the mere involvement of "sand" and "mud" was insufficient, alone, to constitute "pollution."  The court reasoned that the defendant need not have caused environmental harm to have contaminated the area, but its decision to "spen[d] hundreds of thousands of dollars on the expedited removal of those substances" demonstrated that the land had been soiled and rendered unfit for use.  *Id.* at 651-52.

Finally, in *Eastern Concrete Materials, Inc.*, 948 F.3d at 301-02, the Fifth Circuit applied the same dictionary definitions from *Cleere Drilling* to find that a quarry's rock fines had contaminated a creek.  The rock fines were released when a manager failed to shut down a pump, causing a substantial discharge that changed the creek's flow and contours.  *Id.* at 294-95.  The Fifth Circuit noted that the rock fines did not "mix" with the creek to make it "impure"—the definition in Black's Law Dictionary—but they were still "contaminants" under Webster's definition because they "*rendered* the creek *unfit for use* as a habitat for trout and other species."  *Id.* at 302 (emphasis added).

13

In sum, these authorities have parallels to this lawsuit, but they do not stand for the proposition that aggregates and solid particulates constitute "pollutants" *per se*. Such a proposition would allow the tail to wag the dog. The Court cannot look to prior applications of pollution-exclusion clauses and then search the Underlying Lawsuits for mentions of the same materials. Rather, the Court must look to the specific factual allegations in the Underlying Lawsuits and then apply policy language and its plain meaning to those allegations. *Green Tree Fin.*, 249 F.3d at 391-92.

### C. The Underlying Lawsuits do not allege that Triple PG discharged "contaminants" or "waste" into the waterways.

Applying the "eight corners" rule, the Court concludes that the Underlying Lawsuits do not allege that Triple PG released "pollutants" into Houston's flood control waterways. Again, the policies define "pollutants" as "any solid, liquid, gaseous or thermal *irritant or contaminant*, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and *waste*." Dkt. 20, App'x at 28, 52 (emphasis added). Thus, summary judgment is appropriate only if the substances in question qualify as "pollutants" because they are "irritants," "contaminants" or "waste." *See* Dkt. 23 at 8-14. A careful review of the underlying factual allegations demonstrates that they are neither.

14

        1.   <u>The lawsuits do not allege that aggregates were "irritants."</u>

As a preliminary matter, Atain does not specifically argue that the Underlying Lawsuits implicate "irritants."   Indeed, the only mention of "irritants" in Atain's motion appear in its references to case law.  *See* Dkt. 20 at 12-15.  The Court therefore agrees with Triple PG that no factual allegations in the Underlying Lawsuits are fairly construed as alleging injury from "irritants," as defined by the Fifth Circuit.  *See Longhorn Gasket & Supply Co. v. United States Fire Ins. Co.*, 698 F. App'x 774, 779 (5th Cir. 2017) (citing The American Heritage Dictionary to define "irritant" as "anything causing irritation; esp. physical irritation"); *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 456 (5th Cir. 2009) (quoting Webster's Third International Dictionary to define "irritant" as "an agent by which irritation is produced (a chemical)"); *see also Waste*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/irritant (last visited February 27, 2023).  This is particularly true because the Underlying Lawsuits allege damages to property, not damages arising out of personal injury.

Accordingly, Atain has not demonstrated that any of Triple PG's allegedly discharged materials qualifies as an "irritant" that falls within the Total Pollution Exclusion.

2.   The lawsuits do not allege that the aggregates were "contaminants."

The factual allegations in the Underlying Lawsuits are substantially identical, except that the *Del Pino* petition describes the types of materials released into Houston-area waterways as "processed water, silt, sand, sediment, dirt, and other materials," while the *Ellisor* and *Nelson* petitions allege the release of generic "materials and substances."  *Compare* Dkt. 20, App'x at 12 (*Del Pino* ¶ 7), *with id.* at 63 (*Ellisor* ¶ 8) *and id.* at 270-71 (*Nelson* ¶ 8).  This distinction does not change the outcome because none of the Underlying Lawsuits accuse Triple PG of releasing "contaminants" pursuant to Atain's authorities.[5]

a.   *There is no allegation that any discharge soiled, stained, corrupted, or infected the waterways or made them "impure" by mixture.*

The nature of the underlying allegations readily forecloses any reliance on certain alternative definitions of "contaminant."  As mentioned above, one

---

[5] The parties disagree on whether the Underlying Lawsuits allege facts that satisfy the definitions of "contamination," but Atain does not endorse a specific definition of "contaminant" that it believes those allegations would have satisfied.  It instead relies on the definitions and analyses in *Clarendon*, *Cleere Drilling*, and *Eastern Concrete*. Dkt. 20 at 12-18.  Given that Atain explicitly argues that the exclusion is not ambiguous, Dkt. 26 at 4-5, thereby asserting that "contaminant" has been adequately defined by case law, the Court need not address whether the policy is ambiguous before analyzing the Underlying Lawsuits within the ambit of the "eight corners" rule.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (insurance policies, like contracts, are ambiguous only if the express language cannot be given "definite or certain legal meaning").

meaning of "contamination" is a "[c]ondition of impurity resulting from mixture or contact with foreign substance." *Cleere Drilling*, 351 F.3d at 651 (quoting Black's Law Dictionary).  A related definition provides that "contaminate" means "to soil, stain, corrupt, or infect by contact or association ...: make inferior or impure by mixture ...." *McConnell Constr. Co. v. Ins. Co. of St. Louis*, 428 S.W.2d 659, 661 (Tex. 1968) (quoting this definition from Webster's Third New International Dictionary).

For these definitions to foreclose a duty to defend, the Underlying Lawsuits would need to complain that Triple PG released substances that rendered the waterways and lakes impure, either by mixing with the existing water or soiling or staining it upon contact.  That is not what the Underlying Lawsuits allege.  Instead, they allege the mere *presence* of the released substances reduced the *capacity* of the waterways, thereby exacerbating flooding during Hurricane Harvey.  *See* Dkt. 20, App'x at 124-25 (*Ellisor* ¶¶ 565-68), 242-43 (*Del Pino* ¶¶ 609-12), 310-11 (*Nelson* ¶¶ 330-33).

Rather than assert that the released substances combined with water in the waterways, the Underlying Lawsuits invoke a different physical phenomenon whereby the substances displaced the water.  As such, the allegations do not implicate either definition of "contaminant."  *Cf. McConnell*, 428 S.W.2d at 661 (corrosion constituted physical "destruction and …

17

disintegration" or a "degenerative reaction," but not "contamination" vis-à-vis a mixture resulting in impurity that would trigger a policy exclusion).

> b.   *The allegations do not assert that Triple PG's releases rendered the waterways unfit for use.*

The alternative definition of "contaminant" requires a more nuanced analysis.  Under that definition, "to contaminate" means "to render unfit for use by the introduction of unwholesome or undesirable elements." *Cleere Drilling*, 351 F.3d at 651 (quoting Webster's Third New International Dictionary); *see also McConnell*, 428 S.W.2d at 661 (same definition).

Although the substances at issue may be characterized as "unwholesome or undesirable" when added to the waterways, the critical question is whether Triple PG's alleged introduction of those substances rendered the waterways "unfit for use." *See Cleere Drilling*, 351 F.3d at 651.  That definition necessarily requires the Court to consider the magnitude of Triple PG's alleged conduct. After all, releasing a nominal quantity of substances could not have made the waterways unfit for their flood-control purposes.[6]

---

[6] This result, which conditions "contamination" on magnitude and causation to unfitness, comports with the "common sense" limiting principle that insureds should not be denied coverage whenever they release only a slight amount of "foreign" or "unwanted" material. *Cleere Drilling*, 351 F.3d at 652-53 (analyzing *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.*, 112 F.3d 184, 188 (5th Cir. 1997), and *Pipefitters Welfare Educ. Fund v. Westchester Fire*, 976 F.2d 1037 (7th Cir. 1992), to note that hypothetically absurd outcomes would result if pollution-exclusion language is not applied with some limitation).

18

Here, however, the Underlying Lawsuits attribute the reduced capacity of the waterways to the *collective* actions of more than 50 defendants. Triple PG is merely one out of 53 defendants in *Ellisor*, 56 in *Del Pino*, and 55 in *Nelson*. *See* Dkt. 20, App'x at 114-21 (*Ellisor* ¶¶ 502-54), (*Del Pino* ¶¶ 543-98), (*Nelson* ¶¶ 265-319) (naming defendants as parties). There is no claim that any defendant, including Triple PG, individually "render[ed]" the waterways "unfit for use."

To the contrary, the underlying plaintiffs alleged that "the negligence of Triple PG ... was a proximate cause of the flooding of Plaintiffs' properties, and Defendants' negligent conduct is *inextricably combined*"; those plaintiffs also allege that, because their damages cannot be apportioned, "all defendants, including Triple PG ..., are jointly and severally liable for the flooding of Plaintiffs' properties." *Id.* at 63-64 (*Ellisor* ¶ 10), 155-56 (*Del Pino* ¶ 9), 270-71 (*Nelson* ¶ 10) (emphasis added). Construing those factual allegations plainly, Triple PG—as an individual party—was not alleged to have released enough materials to displace the water and cause flooding to plaintiffs' property. *See Harken*, 261 F.3d at 471; *Merch. Fast Motor Lines*, 939 S.W.2d at 141.

Moreover, the only allegations against Triple PG appear in the petitions' venue section, wherein plaintiffs accused Triple PG of receiving TCEQ citations for improper wastewater treatment and, as described *supra*, for

19

"inextricably" combining its run-off materials with co-defendants' materials. *See generally id.* 60-64 (*Ellisor* ¶¶ 7,8 10), 154-56 (*Del Pino* ¶¶ 7, 9), 339-43 (*Nelson* ¶¶ 7, 8, 10).  The petitions' factual backgrounds do not specifically identify Triple PG; instead, they allege additional facts against other entities or against a vague subset of defendants (which may or not include Triple PG):

- "Many defendants to this lawsuit own and/or operate mining facilities" near the flood control waterways.  *Id.* at 126 (*Ellisor* ¶ 569), 244 (*Del Pino* ¶ 613), (*Nelson* ¶ 334).

- "Many defendants have been cited by Texas Commission on Environmental Quality (TCEQ) for numerous issues, including ['allowing materials and substances' or 'excessive discharge which contained runoff dust, sand, construction materials, and other products produced and/or used by Defendants'] at locations and/or facilities and/or properties adjacent to" the waterways.  *Id.* at 126-27 (*Ellisor* ¶ 569), 244-45 (*Del Pino* ¶ 613), 312-13 (*Nelson* ¶ 334) (specifically identifying the LGI co-defendants).

- "Some defendants were cited because they were operating above their allowed permit limits.  Other defendants were operating without any permits at all."  *Id.* at 127 (*Ellisor* ¶ 570), 245 (*Del Pino* ¶ 614), 313 (*Nelson* ¶ 335).

- "The defendants that own and/or operate mining facilities, construction sites, batch plants commercial properties and/or other facilities" have reduced vegetation and reused to erect barriers to stop spill over into the waterways.  *Id.* at 127-28 (*Ellisor* ¶ 571) 245-46 (*Del Pino* ¶ 615), 313-14 (*Nelson* ¶ 336).

Atain has not demonstrated which, if any, of these allegations can be attributed to Triple PG such that the Underlying Lawsuits have stated a claim for pollution *specifically* against them.  That is, Atain cannot show that the underlying plaintiffs' allegations that Triple PG's failure "to prevent materials

20

and substances at their facilities and/or job sites and/or commercial developments and/or properties from entering the East Fork of the San Jacinto River" was an independent cause of plaintiffs' property damage—notwithstanding plaintiffs' allegations that Triple PG's conduct was "inextricably combined" with the other defendants' conduct. *Id.* at 60-64 (*Ellisor* ¶¶ 8 10), 154-56 (*Del Pino* ¶¶ 7, 9), 339-43 (*Nelson* ¶¶ 8, 10). And the Court cannot assume that any additional allegations of wrongdoing include Triple PG when the underlying plaintiffs did not attribute all allegations to *all* defendants. *Compare Sphere Drake Ins. PLC v. Gainsco Cnty. Mut. Ins. Co.*, 273 F.3d 1100 (5th Cir. 2001) (per curiam) (construing the underlying plaintiffs' use of "defendants" generally as "convenient shorthand in lieu of redundantly re-alleging the same facts against each [of hundreds of] defendant[s] by name"), *with Admiral Ins. Co. v. Petron Energy, Inc.*, 1 F. Supp. 3d 501, 507 (N.D. Tex. 2014) (relying on *Sphere Drake* to construe the underlying allegations against one "and/or" another defendant to be vague and not specifically targeted at the insured, and concluding the insurer had "not borne its burden of demonstrating that [the pollution] exclusion ... preclude[s] a duty to defend").

Liberal construction is especially warranted because the underlying plaintiffs were intentional about their pleadings. They theorize that harm to

Houston's flood controls occurred gradually, with no defendant bearing sole responsibility:

- Since 1954, Lake Houston's water capacity has "sustained a steady decline," measured at 21.4% in 2011.  Dkt. 20, App'x at 124-25 (*Ellisor* ¶¶ 565-67), 242-43 (*Del Pino* ¶¶ 609-11), 310-111 (*Nelson* ¶¶ 330-32).

- Other surveys "over the past few decades" show similar capacity decreases in the waterways surrounding Houston, including the San Jacinto River.  *See id.* at 125 (*Ellisor* ¶ 568), 243 (*Del Pino* ¶ 612), 311 (*Nelson* ¶ 333).

- The release of materials that decreased capacity occurred through a "series of actions [that] has occurred over time."  *See id.* at 63 (*Ellisor* ¶ 9), 155 (*Del Pino* ¶ 8), 270 (*Nelson* ¶ 9).

- Only defendants' actions, "[a]ltogether" caused the waterways to "lose capacity."  *Id.* at 128 (*Ellisor* ¶ 572), 246 (*Del Pino* ¶ 616), 314 (*Nelson* ¶ 337).

As a final matter, the type of materials released and Triple PG's role "at least in part" in displacing water capacity are not sufficient to trigger the Total Pollution Exclusion.  That is because the Court need not address whether Triple PG's release of "pollutants" caused property damage "in whole or in part" *until* Atain has proven the release of "pollutants" at all.[7]  *See* Dkt. 20, App'x at 28 (Total Pollution Exclusion).  And to qualify as "pollutants" under

---

[7] The Underlying Lawsuits seek joint and several liability against all defendants, including Triple PG.  Dkt. 20 at 63-64, 130-31, 133, 137-38 (*Ellisor* ¶¶ 10, 580, 589, 603; 155-56, 248-49, 251, 255-56 (*Del Pino* ¶¶ 9, 624, 633, 647); 270-71, 316-17, 319, 323-24 (*Nelson* ¶¶ 10, 345, 354, 368).  Whereas this attribution of damages is a legal theory, the Court's analysis is limited to *factual* allegations.  *Green Tree Fin.*, 249 F.3d at 391 ("The focus of this [eight corners] inquiry is on the facts alleged, not on the actual legal theories.").

the relevant definition of "contaminate," the actions of Triple PG must have caused the waterways' unfitness.  Yet the Underlying Lawsuits assert it was only *all* defendants' collective conduct that caused water displacement through a "series of actions [that] has occurred" from 1954 to 2017.  *See id.* at 63 (*Ellisor* ¶ 9), 155 (*Del Pino* ¶ 8), 270 (*Nelson* ¶ 9).

In sum, under the "eight corners" rule, the underlying allegations fail to satisfy the recognized definitions of "contamination."  This definition of "pollutants" does not foreclose Atain's duty to defend.

### 3.   The aggregates allegedly released were not "waste."

Finally, the Court finds that the materials and substances allegedly responsible for the property damages are not "waste" under the Total Pollution Exclusion.  Though Atain does not endorse a specific definition of "waste," it points to allegations in *Ellisor* and *Nelson*, which "continue to reference the Texas Water and Administrative Codes" and "continue to reference external documents such as the TCEQ investigations."  Dkt. 20 at 17.  The Court is not persuaded that these general references to Texas regulations and enforcement actions are sufficient to demonstrate that the Underlying Lawsuits accused Triple PG of releasing "waste" into Houston's waterways.

First, the Underlying Lawsuits contain a screenshot of a TCEQ letter to Triple PG regarding "Notice of Violation for Comprehensive Compliance

Investigation," but the content of the letter is not linked to water displacement or to plaintiffs' property damage generally.  In fact, the letter states that Triple PG's violation arose out of "wastewater treatment" (not release) and that "the alleged non-compliances have been resolved."  Dkt. 20, App'x at 62 (*Ellisor* ¶ 7), 154 (*Del Pino* ¶ 6), 269 (*Nelson* ¶ 7).   Moreover, in the petitions' factual allegations section, plaintiffs claim that that the TCEQ cited defendants "for numerous issues, including allowing materials and substances produced and/or used and/or maintained" to enter Houston waterways, but only the "LGI Defendants" are identified as recipients of citations.  *See supra*, Section II.C.2.b (citing Dkt. 20, App'x at 126-27 (*Ellisor* ¶ 569), 244-45 (*Del Pino* ¶ 613), 312-13 (*Nelson* ¶ 334)).   The Court must therefore assume that Triple PG were not among the "many defendants" allegedly cited for releasing materials.  *Harken*, 261 F.3d at 471; *Merch. Fast Motor Lines*, 939 S.W.2d at 141.

Second, the policy language implies that Triple PG's discharge was not waste.  The policy identifies Triple PG's business as "sand mining."  Dkt. 20, App'x at 1, 8.  According to Atain, the mere dealing or handling of sand (or particulates) establishes waste, as it was understood in *Clarendon*, *Cleere Drilling*, and *Eastern Concrete*.  *Id.* at 12-15. But there is nothing about "sand mining" that inherently indicates the generation of waste.  Moreover, the factual allegations do not characterize sand or mining materials as "unwanted"

or "superfluous." *See Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418, 423 (Tex. App.—Waco 2000, pet. denied) (defining "waste" to include "an unwanted by-product of a manufacturing process"); *Waste*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/waste (last visited February 27, 2023) (defining "waste" as "damaged, defective or superfluous material produced by a manufacturing process"); *Waste*, American Heritage Online Dictionary, https://ahdictionary.com/word/search.html?q=waste (last visited February 27, 2023) (defining waste to include "an unusable or unwanted substance or material"). *See also generally* Dkt. 20, App'x at 58-421 (Underlying Petitions); *supra*, Section II.C.2.

If anything, Atain insured Triple PG to operate in the sand mining industry, and the released materials are the very products that are essential to Triple PG's daily business operations and services. *Id.*, App'x at 1, 8. They therefore do not constitute "waste" under the Total Pollution Exclusion. Because Atain has not shown that coverage is foreclosed, it owes Triple PG a duty to defend against the Underlying Lawsuits.

### III. <u>Resolving Atain's duty to indemnify is premature.</u>

Whereas the duty to defend hinges on factual *allegations*, the "facts *actually established* in the underlying suit control the duty to indemnify." *Pine*

25

*Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009) (emphasis added) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006)).  The duty to indemnify depends on "whether a plaintiff ultimately prevails on a claim covered by the policy." *Penn-Am. Ins. Co. v. Tarango Trucking, L.L.C.*, 30 F.4th 440, 448 & n.25 (5th Cir. 2022) (quoting *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 n.41 (Tex. 2008)).

Because Atain owes the Triple PG a duty to defend, it would be "premature for the district court to decide the indemnity issue." *Id.*  The recommended course is to deny Atain's summary-judgment motion, both with respect to the duty to defend and duty to indemnify Triple PG in the Underlying Lawsuits.

In addition, Triple PG asks for abatement of this suit until its right to indemnification is ripe for resolution.  Dkt. 23 at 3, 21-23.  The Court agrees that, under the recommended disposition of the defense and indemnity issues, the appropriate course is to abate this suit until the Underlying Lawsuits have been resolved.  *See, e.g.*, *Fed. Ins. Co. v. Northfield Ins. Co.*, 2017 WL 11633133, at *23-24 (S.D. Tex. Nov. 15, 2017) (granting stay upon concluding that insurer owed duty to defend, but that issue of indemnification was not ripe for resolution); *Chartis Specialty Ins. Co. v. JSW Steel (USA), Inc.*, 2015 WL

26

4378366, at *3 (S.D. Tex. July 8, 2015) (granting stay even after finding no duty to defend but finding that duty to indemnify was not yet justiciable).

### Recommendation

It is therefore **RECOMMENDED** that the Court **DENY** Plaintiff Atain Specialty Insurance Company's Motion for Summary Judgment (Dkt. 20) and **GRANT** Defendant Triple P.G. Sand Development, L.L.C.'s request (Dkt. 23) to abate this suit until the underlying state-court suits have been resolved.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 28, 2023 at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge

27